**Nos. 23-3279; 23-3282**

# United States Court of Appeals
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE

*v.*

JAIME CENTENO,
DEFENDANT-APPELLANT

*On Appeal from the United States District Court
for the Southern District of California
22CR2864-H*

**GOVERNMENT'S ANSWERING BRIEF**

ADAM GORDON
*United States Attorney*

DANIEL E. ZIPP
*Assistant U.S. Attorney
Chief, Appellate Section
Criminal Division*

PETER KO
*Assistant U.S. Attorney*

*880 Front St., Rm. 6293
San Diego, CA 92101
(619) 546-7359*

## TABLE OF CONTENTS

Page

Jurisdiction and Bail Status ................................................... 1

Questions Presented ................................................ 1

Statutory Provisions.................................................... 2

Statement ........................................................ 3

Summary of Argument............................................ 7

Argument ........................................................ 10

A.  The Court Correctly Denied the *Batson/J.E.B.*
    Challenge ................................................... 10

    1.  Standard of Review ................................... 10

B.  The Court Soundly Exercised Its Discretion by
    Directing Centeno to Say 'Medication' Instead of
    'Olanzapine' ................................................ 22

    1.  Standard of Review................................... 22

Conclusion ........................................................ 30

Certificate of Compliance

## TABLE OF AUTHORITIES

Cases:

   *Batson v. Kentucky*,
     476 U.S. 79 (1986)................................................ passim

   *Burks v. Borg*,
     27 F.3d 1424 (9th Cir. 1994)............................................21

*Carriger v. Lewis*,
　971 F.2d 329 (9th Cir. 1992) (en banc) ............................27

*Carter v. City of Wauwatosa*,
　114 F.4th 866 (7th Cir. 2024) ........................................16

*Chambers v. Mississippi*,
　410 U.S. 284 (1973) .......................................................27

*Cooperwood v. Cambra*,
　245 F.3d 1042 (9th Cir. 2001) ........................................13

*Foster v. Chatman*,
　578 U.S. 488 (2016) .......................................................21

*Green v. LaMarque*,
　532 F.3d 1028 (9th Cir. 2008) ........................................16

*Hernandez v. New York*,
　500 U.S. 352 (1991) ................................................14, 15

*Holmes v. South Carolina*,
　547 U.S. 319 (2006) .......................................................27

*J.E.B. v. Alabama ex rel. T.B.*,
　511 U.S. 127 (1994) ................................ 4, 7, 10 11, 14, 21

*Johnson v. California*,
　545 U.S. 162 (2005) .......................................................12

*Lewis v. United States*,
　146 U.S. 370 (1892), abrogated on other grounds as
　recognized by *Illinois v. Allen*, 397 U.S. 337 (1970). ......11

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
　637 F.3d 939 (9th Cir. 2011) ..........................................25

*Nguyen v. Frauenheim*,
　45 F.4th 1094 (9th Cir. 2022) .........................................13

*Old Chief v. United States*,
519 U.S. 172 (1997).................................................22, 26

*People v. Babbitt*,
45 Cal.3d 660 (1988) ......................................................23

*People v. Taylor*,
48 Cal.4th 574 (2010) ....................................................14

*Purkett v. Elem*,
514 U.S. 765 (1995) (per curiam) ........................ 12, 14, 15

*Taylor v. Illinois*,
484 U.S. 400 (1988).......................................................27

*Tolbert v. Gomez*,
190 F.3d 985 (9th Cir. 1999)..........................................12

*United States v. Alanis*,
335 F.3d 965 (9th Cir. 2003)..........................................17

*United States v. Alexander*,
106 F.3d 874 (9th Cir. 1997)..........................................10

*United States v. Alvarez-Ulloa*,
784 F.3d 558 (9th Cir. 2015)..........................................17

*United States v. Boulware*,
384 F.3d 794 (9th Cir. 2004)..........................................28

*United States v. Chinchilla*,
874 F.2d 695 (9th Cir. 1989)..........................................13

*United States v. Crowe*,
563 F.3d 969 (9th Cir. 2009)..........................................28

*United States v. Ellis*,
147 F.3d 1131 (9th Cir. 1998)....................................25-26

*United States v. Hernandez-Garcia*,
44 F.4th 1157 (9th Cir. 2022) ...................................10, 16

iii

*United States v. Hernandez-Herrera,*
  273 F.3d 1213 (9th Cir. 2001)...........................................5

*United States v. Hernandez-Quintana,*
  874 F.3d 1123 (9th Cir. 2017)..........................................12

*United States v. Hinkson,*
  585 F.3d 1247 (9th Cir. 2009) (en banc)..........................22

*United States v. Ifediba,*
  46 F.4th 1225 (11th Cir. 2022) ......................................25

*United States v. Lewis,*
  837 F.2d 415 (9th Cir. 1988)...........................................12

*United States v. Lombera-Valdovinos,*
  429 F.3d 927 (9th Cir. 2005)............................................5

*United States v. McCoy,*
  23 F.3d 216 (9th Cir. 1994)............................................10

*United States v. Salcido-Corrales,*
  249 F.3d 1151 (9th Cir. 2001).........................................11

*United States v. Scheffer,*
  523 U.S. 303 (1998).......................................................27

*United States v. Stinson,*
  647 F.3d 1196 (9th Cir. 2011).........................................10

*United States v. Tsarnaev,*
  595 U.S. 302 (2022)..................................................22, 25

*Wade v. Terhune,*
  202 F.3d 1190 (9th Cir. 2000).........................................14

*Yee v. Duncan,*
  463 F.3d 893 (9th Cir. 2006)...........................................19

iv

Statutes:

18 U.S.C. § 3231...............................................................1

28 U.S.C. § 1291...............................................................1

Rules:

Fed. R. App. P. 4(b)(1)...................................................1

Fed. R. Crim. P. 12.2.....................................................26

Fed. R. Evid. 401..............................................2, 22, 27

Fed. R. Evid. 402..............................................2, 22, 27

Fed. R. Evid. 403.................................. 2, 6, 24, 25, 27, 28

Fed. R. Evid. 803(6) ......................................................24

Other Authorities:

9th C. Manual of Model Crim. Jury Instr. 1.1
(Mar. 2025 ed.)…………………………………………………...26

Black's Law Dictionary (12th ed. 2024)……………………23

Webster's Third New Int'l Dictionary Unabridged
(1981)……………………………………………………………16

**Nos. 23-3279; 23-3282**

# United States Court of Appeals
### FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE

*v.*

JAIME CENTENO,
DEFENDANT-APPELLANT

*On Appeal from the United States District Court
for the Southern District of California
22CR2864-H*

## JURISDICTION AND BAIL STATUS

The district court had jurisdiction under 18 U.S.C. § 3231 as Centeno stood charged with an offense against the United States. Clerk's Record (R) 16. The court entered final judgment on October 30, 2023. Vol. 1, Excerpts of Record 2 (1-ER-2). Centeno timely noticed his appeal on Nov. 2, 2023. 3-ER-532; Fed. R. App. P. 4(b)(1). Jurisdiction here rests on 28 U.S.C. § 1291. Centeno is in custody and projected to be released on Sept. 13, 2026.

## QUESTIONS PRESENTED

1. During jury selection, the prosecution used four of six peremptory strikes on women. The 26 remaining potential jurors included at least 11 women, and the eventual seated jury had eight women, nine including an alternate. Did the district court correctly reject

1

Centeno's claim that the prosecution purposely excluded women from the jury because of their gender?

2. Centeno had papers that referred to Olanzapine, and he was prescribed Olanzapine after his arrest. He sought to argue an inference from those facts was he wanted to be arrested partly because he wanted Olanzapine, an anti-psychotic, but he did not provide notice of a mental health defense or expert testimony, and he said he would not elicit evidence of the drug's purpose. Did the district court abuse its discretion by instructing Centeno to say "medication" instead of "Olanzapine"?

## STATUTORY PROVISIONS

Fed. R. Evid. 401 states: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Fed. R. Evid. 402 states: "Relevant evidence is admissible …."

Fed. R. Evid. 403 states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## STATEMENT

1.  Centeno entered the United States from Mexico on foot at the San Ysidro Port of Entry and falsely claimed he was a U.S. citizen. 2-ER-224-35; 2-ER-245; 2-ER-249; 2-ER-252. Centeno had tried to do the same five years earlier, saying then that he was a Legal Permanent Resident. In fact, as Centeno admitted after the earlier incident, he was not a U.S. citizen and previously had been removed from the United States. 2-ER-288-91. An indictment charged Centeno with being a removed alien who tried to re-enter the country illegally. R 16.

2.  At trial, after strikes for cause, the pool of potential jurors had 15 males, 15 females, and two whose genders are unclear. 2-ER-86-198 (remaining females were jurors 13, 15, 17-21, 23-27, 30-31, 37; uncertain gender were jurors 1, 32). The prosecution then peremptorily struck four females and two males leaving the venire with 13 males, 11 females, and two whose genders are unclear before accounting for Centeno's strikes. See 2-ER-199; 2-ER-214-16 (striking female jurors 15, 18, 24, 25). The seated jury ended up with eight females, nine including an alternate. 2-ER-200-03 (female jurors were 2 [Casas, previously juror 37], 5 [Gosalia, previously juror 13], 6 [Laver, previously juror 17], 7 [Cody, previously juror 20], 8 [Rosa,

3

previously juror 21], 9 [Enriquez, previously juror 23], 10 [Berryman, previously juror 26], 11 [Unverferth, previously juror 27], alternate 2 [Garcia, previously juror 30]).

Centeno accused the prosecution of deliberately discriminating against women in using its strikes, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), and *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994). The only basis for his challenge was that the prosecution struck four women. The prosecutor started to say *Batson* required Centeno "to make a prima facie showing" of gender discrimination before the prosecution had to respond. 2-ER-199. The court interrupted and asked if the prosecutor had valid reasons for the strikes. *Id*. The prosecutor said she did. The court then denied the *Batson* motion without asking the prosecutor to explain her reasons. *Id*.

Later that day, the prosecutor asked to explain the challenged strikes. 2-ER-214. She said she struck Juror 15, because the juror wondered why she was sent for further inspection every time she crossed the border. *Id*. The prosecutor did not want the juror's "negative experience" to affect her assessment of the Customs and Border Protection officers testifying in this case. 2-ER-214-15.

4

Juror 18 said "she had an opinion regarding deportation that was somewhat negative," because she "felt that some of the deportations were 'unjust.'" The prosecutor thought her "negative experiences and belief that it was unjust would … bias her opinion." 2-ER-215. Juror 24 "had bad experiences or negative experiences because she had friends whose parents were deported," and "she didn't necessarily agree that the parents were rightfully deported." 2-ER-215. Juror 25 recently started a new job and "said she might have a 'psychological issue' even if her employer had no issues with [the juror] being here." 2-ER-216. The court responded to each of the first three strikes by saying it "believes that's a fair explanation." 2-ER-215-16. It said it "believes [the last is] a fair explanation and a nondiscriminatory reason." 2-ER-216.

3. The defense argued at trial, e.g., 2-ER-210-12, that Centeno wanted to be arrested, not to enter the country and roam freely, i.e., he lacked the "the specific intent to enter 'free from official restraint'" needed for the attempted illegal re-entry crime. *United States v. Lombera-Valdovinos*, 429 F.3d 927, 929 (9th Cir. 2005); see also *United States v. Hernandez-Herrera*, 273 F.3d 1213, 1218-19 (9th Cir. 2001). To support that claim, the defense sought to elicit evidence that records from a facility where Centeno was housed in

5

2020 and an address book he had when he was arrested for this case both mentioned Olanzapine and, days after his arrest, a doctor wrote him a prescription for the same. The defense argued that showed Centeno wanted to be arrested partly to obtain Olanzapine. See, e.g., 1-ER-48-49. (To support the lack-of-intent argument, the defense also offered evidence that Centeno gave his true name and date of birth; was cold, dirty, and hungry; did not have cash or a phone; and had his Mexican birth certificate, old U.S. identification cards, and the address book which included names of organizations that support prisoners. 3-ER-326-52; 3-ER-358; 3-ER-413.)

The prosecution objected on several grounds, including relevance and Fed. R. Evid. 403. 1-ER-37-38; 3-ER-382. Centeno said he would not offer evidence of what Olanzapine treats (it is an anti-psychotic), so the prosecution argued the drug name was irrelevant and could cause confusion, speculation, and extrajudicial curiosity. 1-ER-38-39; 3-ER-382. The court ruled Centeno could not say "Olanzapine" but could say "medication." 2-ER-305-08; 3-ER-392-93. It also indicated Centeno could establish that the medication in the records and his address book, and the medication prescribed for him, were the same, 2-ER-306 (Court: "You can just say did he get

6

medication and then was the medication the same"), but Centeno never pursued that.

Despite the ruling, the jury still heard references to Olanzapine. While the prosecution's objection to the doctor's proposed testimony was pending but before the court ruled, Centeno's lawyer asked a witness if the 2020 facility records "include a reference to a medication called Olanzapine." The court sustained an objection and told the defense not to use the name. 2-ER-305-06. Later that day, Centeno's lawyer asked her investigator if she had seen "information" in Centeno's address book "that was not contact information." The investigator said she had. The lawyer asked what, and the investigator said "Olanzapine." The court struck the answer. 2-ER-359. The address book mentioning Olanzapine also was admitted in evidence and given to the jury without redactions, but the court said not to point out the name. 3-ER-338-39; 3-ER-422-25.

### SUMMARY OF ARGUMENT

Centeno's conviction should be affirmed.

1. The district court correctly denied the *Batson*/*J.E.B.* challenge. Centeno's only basis for claiming purposeful discrimination was four of the prosecution's six peremptory strikes were women.

7

Circuit law holds that merely alleging the prosecutor struck members of a cognizable group is not enough for a prima facie showing. And an inference that the prosecutor purposely sought to exclude women in this case made even less sense. At least 11 women remained among the 26 potential jurors after the peremptory challenges, and eight of 12 seated jurors (nine of 14 including alternates) were women.

Failing to make a prima facie showing defeated the challenge. At any rate, the court plausibly found that the prosecutor's explanations for the four strikes were "fair." Fair connoted the court found the prosecutor's explanations honest, just, and free from fraud or prejudice which necessarily meant it did not think Centeno proved purposeful gender discrimination.

2. The court properly exercised its wide discretion in controlling the admission of evidence by directing Centeno to say "medication" instead of Olanzapine. Centeno said references to Olanzapine on papers in his possession and a prescription for Olanzapine he received after arrest indicated he wanted to be arrested to obtain Olanzapine. The inference is illogical, so this evidence was irrelevant. And even if the inference was not irrational, the drug name

8

did not matter for the inference. The pertinent point under Centeno's reasoning was a drug kept reoccurring, whatever its name. The court soundly ruled that Centeno could make the same point by saying "medication" instead of Olanzapine and eliciting evidence the same medication name appeared in the papers and the prescription. The court cannot be faulted because Centeno did not do the second part.

The Rule 403 balance also weighed against saying Olanzapine. Repeated talk about Olanzapine risked causing jurors to consider or speculate about the drug's purpose, Centeno's mental health, or empathy for Centeno. None of these were matters the jury could properly consider.

Centeno incorrectly suggests his right to present a defense took precedence over the evidence rules. The right to present a defense does not convert evidence inadmissible under the rules into evidence that must be admitted despite the rules. All defense evidence still must be admissible under the rules.

In any case, barring mention of Olanzapine could not have affected the verdict. Centeno pointed to other evidence that, he said, showed he wanted to be arrested. Individually and collectively that evidence was stronger than the Olanzapine inference. The jury still

did not have a reasonable doubt that Centeno intended to enter and roam freely. Adding a weak, at most, inference to the stronger evidence could not rationally have changed anything.

ARGUMENT

A. The Court Correctly Denied the *Batson/J.E.B.* Challenge

1. *Standard of Review*: A ruling that the challenger failed to establish a prima facie case of discrimination is reviewed for clear error. *United States v. Stinson*, 647 F.3d 1196, 1207 (9th Cir. 2011). Whether the prosecution offered gender-neutral reasons for a strike is reviewed de novo. See *United States v. McCoy*, 23 F.3d 216, 217 (9th Cir. 1994). A ruling that the challenger failed to establish intentional discrimination ordinarily is reviewed for clear error but may be reviewed de novo if the lower court did not engage in meaningful analysis or failed to perform this step when required. *United States v. Hernandez-Garcia*, 44 F.4th 1157, 1166 (9th Cir. 2022).

*United States v. Alexander*, 106 F.3d 874, 877 (9th Cir. 1997), and other decisions hold that findings are not clearly erroneous if they "are plausible in light of the record viewed in its entirety, even if [the appellate court] would have weighed the evidence differently had [it] been the trier of fact." "Where there are two permissible views of the evidence, the factfinder's choice between them cannot

be clearly erroneous." *United States v. Salcido-Corrales*, 249 F.3d 1151, 1155 (9th Cir. 2001) (internal quotation marks omitted).

2. Historically, the "essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control," permitting a lawyer to "intuit which jurors are likely to be the least sympathetic" even if the lawyer may be "unable to explain the intuition." *J.E.B.*, 511 U.S. at 147-48 (O'Connor, J., concurring) (cleaned up). It is meant to be "as Blackstone says, an arbitrary and capricious right, and it must be exercised with full freedom, or it fails of its full purpose." *Lewis v. United States*, 146 U.S. 370, 378 (1892) (internal quotation marks omitted), abrogated on other grounds as recognized by *Illinois v. Allen*, 397 U.S. 337 (1970). *Batson* and *J.E.B.* are a "significant intrusion" on that legitimate function that disallow a peremptory strike deliberately used to exclude a juror because of race or gender. *J.E.B.*, 511 U.S. at 147 (O'Connor, J., concurring).

*Batson*/*J.E.B.* challenges require at least one and possibly three steps to resolve: 1) the party challenging the strike must make a prima facie showing of gender discrimination, 2) if made, the opponent must offer a gender-neutral explanation for the strike, and 3) the court then must decide if the party challenging the strike

11

proved deliberate gender discrimination. See *Purkett v. Elem*, 514 U.S. 765, 767 (1995) (per curiam).

The district judge apparently thought Centeno failed the first: the court interrupted the prosecutor when she raised the prima facie requirement and, after obtaining the prosecutor's assurance she had "valid" reasons for the strikes, denied the challenge without asking for specifics or saying more. 2-ER-199.

The challenge obviously was deficient on that ground. A prima facie case requires "proffered facts [that] give[] rise to an inference of discriminatory purpose." *Johnson v. California*, 545 U.S. 162, 169 (2005) (internal quotation marks omitted). Centeno's entire proffer was four of the prosecutor's six strikes were women. But circuit law holds that just saying the prosecutor struck members of a cognizable group is not enough. See *United States v. Hernandez-Quintana*, 874 F.3d 1123, 1129 (9th Cir. 2017) (charge that "government struck two jurors who appeared to be minorities … standing alone is not sufficient"); *Tolbert v. Gomez*, 190 F.3d 985, 988 (9th Cir. 1999) (striking "one juror of a cognizable racial group does not by itself raise an inference of discriminatory purpose"); *United States v. Lewis*, 837 F.2d 415, 417 (9th Cir. 1988) ("the fact of the exercise

of a peremptory strike against a black venireman" "does not demonstrate circumstances raising an inference of prosecutorial bias"). And the case here for an "inference of discriminatory purpose" to exclude women from the jury is even flimsier because the prosecution's strikes still left at least 11 women among 26 potential jurors, and the eventual seated jury had eight women, nine counting alternates.

*Cooperwood v. Cambra*, 245 F.3d 1042, 1047-48 (9th Cir. 2001), said similar circumstances did "not raise [the] reasonable inference of racial bias" required for a prima facie case. The prosecutor there struck a black male but also struck jurors of other races, other black persons remained among the potential jurors, and the seated jury had two blacks and four other minorities. *United States v. Chinchilla*, 874 F.2d 695, 698 n.4 (9th Cir. 1989), indicates the same: "the willingness of a prosecutor to accept minority jurors weighs against the findings of a prima facie case." ("[T]he entire trial record, even after defense counsel made the motion," may be reviewed to decide if there was a prima facie case. *Nguyen v. Frauenheim*, 45 F.4th 1094, 1101 (9th Cir. 2022).)

Centeno says he "made his first-step prima facie showing," Appellant's Opening Brief (AOB) 17, but otherwise does not address

this requirement. Besides being wrong on the merits, the first *Batson* requirement is only moot and can only be skipped on appeal "[o]nce a prosecutor has offered a [gender]-neutral explanation for the peremptory challenges *and* the trial court has ruled on the ultimate question of intentional discrimination." *Hernandez v. New York*, 500 U.S. 352, 359 (1991) (emphasis added). Centeno says the court did not do the last. AOB 16-19. If that is true, the prima facie requirement is not moot. See *People v. Taylor*, 48 Cal.4th 574, 612-14 (2010) (reviewing whether prima facie case established despite prosecutor explaining strikes after court denied challenge without comment).

3. Centeno's failure to establish a prima facie case defeats his *Batson*/*J.E.B.* charge. See *Wade v. Terhune*, 202 F.3d 1190, 1198-1200 (9th Cir. 2000). But even making the necessary prima facie showing only means the prosecution must provide gender-neutral explanations for its strikes. See *Purkett*, 514 U.S. at 767. This step "does not demand an explanation that is persuasive or even plausible. … [T]he issue is the facial validity of the prosecutor's explanation." *Id.* at 786 (internal quotation marks omitted). Nothing the

14

prosecutor said to explain her strikes was a "characteristic … peculiar to" women, *id.* at 769 (internal quotation marks omitted), making her explanations facially gender neutral.

4. Centeno does not claim otherwise. See AOB 17. Instead, he argues the court erred at the third *Batson* step. That step, if reached, requires the court to decide "whether the opponent of the strike has proved purposeful [gender] discrimination"; "the ultimate burden of persuasion regarding [gender] motivation rests with, and never shifts from, the opponent of the strike," i.e., Centeno. *Purkett*, 514 U.S. at 767-68.

The court believed the prosecutor offered a "fair explanation" for each of the challenged strikes and added the last was "a nondiscriminatory reason." These findings were not implausible, i.e., clear error. *Hernandez*, 500 U.S. at 364-65, and other decisions stress that the district judge's findings on this point "must be accorded great deference on appeal," because the best evidence often will be the demeanor of the attorney who exercises the challenge," and an "evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" The many potential female jurors left after the prosecutors' strikes coupled with the prosecution's use of some strikes on men rather than

all women also belied any thought the prosecutors purposely sought to exclude women from the jury. (The prosecutors were wildly unsuccessful if that was the plan.) Nor did Centeno suggest why the prosecutors would have wanted women excluded from the jury. No reason is apparent.

Centeno argues the court's "fair explanation" ruling is not the finding it had to make. Yet *Hernandez-Garcia* warns that even if an oral ruling "is not a paragon of clarity[,] … when reviewing a district court's oral pronouncements in court, [courts] must be careful not to formally parse the sentences contained in a transcript of an oral ruling or to demand absolute linguistic precision from the trial judge." 44 F.4th at 1166 (internal quotation marks omitted); see also *Carter v. City of Wauwatosa*, 114 F.4th 866, 875 (7th Cir. 2024) ("the district judge need not use any magic words in completing the step-three [*Batson*] inquiry"). A common meaning of "fair" is "characterized by honesty and justice" or "free from fraud, injustice, prejudice, or favoritism." Webster's Third New Int'l Dictionary Unabridged at 815 (1981). That is no different than saying the prosecutor's "stated reasons … were genuine," *Green v. LaMarque*, 532 F.3d 1028, 1030 (9th Cir. 2008), which Centeno admits is the standard. AOB 17 (quoting *LaMarque*). Centeno equates "fair explanation"

with "plausible explanation" or "facially neutral ground" which *United States v. Alanis*, 335 F.3d 965, 969-70 (9th Cir. 2003), and *United States v. Alvarez-Ulloa*, 784 F.3d 558, 563-65 (9th Cir. 2015), said were insufficient. Yet neither "plausible" nor "facially neutral" means the same as "fair."

Alternatively, Centeno charges the prosecutor made up her reasons for striking Jurors 15 and 25. Juror 25 said three weeks earlier, she was "brought back to [her old employer and promoted] after a three-year COVID layoff." The court asked if that would "pose an issue for time." Juror 25 said, "I think psychologically for me, but my organization is fine with me being here." The court asked if she could "listen to the evidence" if picked as a juror. Juror 25 said, "Absolutely I can. I just—I know I'm going to work some nights and, we're going to be at the Fair this year, so the Fair— so it's going to be— I can do it. I'm just neutral about being here." 2-ER-151-52. The prosecutor later said she struck Juror 25, because she "recently started a new job … and she said that she might have a 'psychological issue' even if her employer had no issues with being here. She herself would be thinking about work." 2-ER-216.

Centeno argues the prosecutor "misrepresented" the source of the juror's "psychological issue." The prosecutor thought the juror

17

meant she "would be thinking about work" during trial, but Centeno thinks the juror's concern "stemmed from what would occur *after* jury duty because she was 'going to work some nights.'" AOB 22-23. What the juror meant is unclear. Either interpretation is possible, though Centeno's probably less so. If the juror's root concern was that she might need to work nights or a lot during trial, "tired," "sleepy," "overwhelmed," or other words or phrases are more natural ways to describe the issue than "psychologically." But "psychologically" fits if the juror's concern was, in trial, she might be mentally elsewhere thinking about work she had to do for the job she just earned back. Regardless, Centeno has the burden of persuasion. His spin on the juror's meaning cannot carry his burden and certainly falls short of showing the judge's ruling was implausible.[1]

---

[1] The prosecutor did not mention it, but some of Juror 25's responses suggested unease with aspects of immigration enforcement. The juror said she did not have an opinion about "deportation itself," but for immigration, "It's just my personal opinion just from watching the news, you know, and the Border Patrol and splitting the families up ... So I don't think— I don't know if that's been resolved, but that's what has been— as a mother, yeah." The court also asked if Juror 25 had "opinions about the fact that people are subject to inspection" entering the country. The juror oddly replied, "If that's the policy, then that's the law." 2-ER-153. Even if not verbalized, most prosecutors in a criminal immigration case would be instinctively wary of a juror who gave these answers. Analyzing

Centeno wrongly claims the prosecutor did not strike two male jurors who "expressed a timing hardship" like Juror 25. AOB 23. (Centeno calls one Juror 12, but until juror Chan was seated, he was Juror 28. 2-ER-158-61; 2-ER-203.) Both jurors denied they had time concerns, and neither alluded to "psychological[]" worries as Juror 25 did. See 2-ER-90-91 (Juror 2: "I'm currently taking a couple of summer classes right now. I think you said that it should be resolved by the end of the week?" Court: "Yes … And that would be okay with you?" Juror 2: "Yeah."); 2-ER-160 (Court: "No issues with time?" Juror 28: "No … Besides my wife not wanting me to be here and on a plane to Vancouver, no." Court: "She's gone?" Juror 28: "No. We canceled."). The same is true for Jurors 3, 13, and 35, who Centeno says "had their own jobs to think about, yet the prosecution did not strike them." AOB 23-24; see 2-ER-96 (Juror 3: "No, I don't have time issues); 2-ER-124 (Juror 13: "I have no time issues."); 2-ER-181-82 (Court: "Is there any issue with time?" Juror 35: "I have a surgery [in 17 days], but it should be fine."). (Based on the name and transcript, Juror 13 seemed to be female. See 2-ER-124-25.) Some also appeared preferable for the prosecution. Juror 3 had

_____

why a juror really was struck is not limited to facts and evidence presented by the prosecutor. See *Yee v. Duncan*, 463 F.3d 893, 899-900 (9th Cir. 2006).

friends in law enforcement. 2-ER-96. Juror 28 said, "Yes, I think it's a very good idea" when asked if he had "any opinions about the fact that everyone is subject to inspection" entering the country. 2-ER-159. (Centeno questions why Juror 25's "psychological[]" comment matters. AOB 24-25. No party burdened with convincing the jury wants a distracted juror.)

Centeno also contends the prosecutor's stated reasons for striking Juror 15 were not her real reasons. Juror 15 said she had been sent for further (secondary) inspection before while crossing the border. She called it "kind of confusing because I didn't understand why I had to keep doing it. And so, every time I would go over to Mexico, I would have to go to Secondary. And, so, I just wondered why." She said no when asked if she would "view that negatively with the Government," 2-ER-129, but the prosecutor said she did not want Juror 15's "negative experience" crossing the border to affect her views of the border officers who would testify in this case. 2-ER-215.

Centeno says "negative experience" mischaracterized what the juror called "confusing." AOB 25-26. But trial attorneys need not accept a juror's statements as fact or limit themselves to a juror's language. "A prosecutor is entitled to disbelieve a juror's *voir dire*

answers, of course," *Foster v. Chatman*, 578 U.S. 488, 509-10 (2016), and to "take into account tone, demeanor, facial expression, emphasis—all those factors that make the words uttered by the prospective juror convincing or not." *Burks v. Borg*, 27 F.3d 1424, 1429 (9th Cir. 1994). Juror 15 obviously did not view her repeated examinations as positive. Everyone would be annoyed, at least, if constantly subjected to unexplained more intrusive inspections than others. The juror described her experiences to a room full of strangers—probably causing some to wonder why she received unusual attention—when a simpler, less personal answer ("fine") was possible if she was not bothered. That suggests the inspections irritated her more than she said. Negative is a reasonable assessment of how Juror 15 really felt regardless of the juror's characterization. That is one of the main reasons for peremptory strikes: allowing parties to remove jurors who they sense have "biases that the juror [her]self does not perceive." *J.E.B.*, 511 U.S. at 162 (Scalia, J., dissenting).

There is no evidence the prosecution was concerned about gender when it used four of its peremptory strikes—apparently instead of just three—on female jurors. The finding that Centeno had not shown purposeful discrimination is plausible. The denial of the *Batson*/*J.E.B.* challenge should be affirmed.

B. The Court Soundly Exercised Its Discretion by Directing Centeno to Say 'Medication' Instead of 'Olanzapine'

1. *Standard of Review*: "Deference is the hallmark of the abuse of discretion review applicable to [evidence rulings]. A reviewing court applying that standard must not substitute its judgment for that of the district court. Rather, an appellate court must defer to the lower court's sound judgment, so long as its decision falls within its wide discretion and is not manifestly erroneous." *United States v. Tsarnaev*, 595 U.S. 302, 322-23 (2022) (internal quotation marks, brackets, and citations omitted); see also *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc) (court abuses its discretion if it identified the incorrect legal rule to apply or if its application of the correct rule was illogical, implausible, or unsupported by inferences that may be drawn from facts in the record).

2. Evidence is only relevant and admissible when it tends to make a fact of consequence more or less probable. Fed. R. Evid. 401, 402. A fact of consequence is a fact on the path of inference to an "ultimate fact," i.e., an element. See *Old Chief v. United States*, 519 U.S. 172, 178-79 (1997).

The fact of consequence Centeno sought to establish was he wanted Olanzapine. He claimed its reoccurring appearances (in the

record from his previous facility, his address book, and the prescription written after his arrest) supported an inference that he wanted the drug and, paired with other facts of consequence, proved he wanted to be arrested, not roam freely in the country. 1-ER-48-49.

This has two problems for relevance. One is the inference is irrational. "Inferences" that are really just assertions unmoored from logical deduction (i.e., that are speculation) are irrelevant. See, e.g., *People v. Babbitt*, 45 Cal.3d 660, 682 (1988); Black's Law Dictionary (12th ed. 2024) ("inference" means a "conclusion reached by considering other facts and deducing a logical consequence from them"). Medication histories often span years and are found in different forms and places such as a doctor's file, a pharmacy's record, or notes in a purse, wallet, or phone. That alone does not logically indicate the person "wants" the medication. It is at least as likely they prefer to avoid it (families have warred over relatives refusing to take prescribed medications) or to have no use for it (most probably prefer life without an underlying condition over taking medication for it).

The second problem is even if the inference did follow, the drug name does not matter for the inference. Any other drug could be substituted for Olanzapine like Hydrocodone or Wellbutrin, and

Centeno's argument is the same, demonstrating the name's irrelevance. The pertinent fact under Centeno's reasoning was the same medication kept reappearing, whatever it was. At minimum, the court rightly ruled that the drug name was irrelevant, and the point could be made by substituting "medication" and noting the same medication name appeared in the records, address book, and prescription. 2-ER-306.[2]

Centeno says specifying Olanzapine "would have added a level of plausibility" to his argument because "medication" could mean something "readily accessible" at any pharmacy that did not require arrest. AOB 30. Olanzapine needs a prescription but is not as hard to obtain as Centeno suggests. See, e.g., Olanzapine, 5 MG Tablet, Amazon Pharmacy, available at https://shorturl.at/1ZBSc (last visited May 16, 2025). And the reality is the jury heard "Olanzapine"

---

[2]   Centeno did not do the latter. He thought the doctor could not say the drug listed in the records and address book was the same drug he prescribed, see 2-ER-306, which might be true as a standalone proposition. If the records and book are not in evidence, statements within are hearsay if offered to prove what they say is true. But Centeno had other paths to the point if he wanted to make it. One was to admit the records and address book in evidence—the book was admitted without objection, 2-ER-339; the records were business records, see Fed. R. Evid. 803(6)—then ask the doctor to examine the items in evidence before redactions and say whether the medication he prescribed appeared in those too.

twice. But even if they had not, the deliberate obfuscation of the name likely made it obvious "medication" did not mean something common and relatively innocuous like Tylenol or ibuprofen. The other problem is this reasoning requires that jurors know what Olanzapine is to know it is not like Tylenol. Yet the defense repeatedly said it would not get into that. See, e.g., 1-ER-48, 50, 59, 67. The drug name and its reoccurrence were irrelevant.

3. That is one reason the district court properly exercised its wide discretion and did not manifestly err. *Tsarnaev*, 595 U.S. at 322-23. Another is even relevant evidence "must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 953 (9th Cir. 2011) (citing Fed. R. Evid. 403).

Repeated talk about Olanzapine risked curiosity about the drug's purpose. That heightened the chances of unauthorized research by a juror, a knowledgeable juror speaking up, or backdoor consideration of mental health or empathy for Centeno. The first two could have derailed the trial, see, e.g., *United States v. Ifediba*, 46 F.4th 1225, 1240 (11th Cir. 2022), for reasons unrelated to the persuasive weight of properly admitted evidence. Cf. *United States*

*v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998) (unfair prejudice in Rule 403 means something with an undue tendency to suggest decision on an improper basis). The last were not matters the jury could consider. See Fed. R. Crim. P. 12.2 (requiring advance notice of insanity defense and expert mental health evidence, which Centeno did not provide); R 92 at 2 (instructing jury not to be influenced by sympathy, consistent with 9th C. Manual of Model Crim. Jury Instr. 1.1 (Mar. 2025 ed.)). Any possible probative value in the name vanished after the court gave Centeno a way to make his point without using it. "[A] judge applying Rule 403 could reasonably apply some discount to the probative value of an item of evidence when faced with a less risky alternative proof going to the same point." *Old Chief*, 519 U.S. at 183. The Rule 403 balance weighed against using the drug's name.

Centeno wrongly suggests the only concern raised below was "confusion … 'because of the dates and everything else'" indicating when he was prescribed Olanzapine and how much. AOB 31. The court thought the records of Centeno's prescription after arrest were "terribly confusing." 3-ER-394. But the prosecution also said the drug's name might cause jurors "to improperly speculate" about its purpose and Centeno's health, "invite[] the jury to" focus on his

26

need for medication, and "mislead the jury" that mental health was an issue. 1-ER-39; see also 3-ER-382 (drug name "would mislead the jury and invite the risk of the jurors speculating what is Olanzapine, why was he prescribed Olanzapine … [and] what is the significance of this Doctor's testimony and this drug specifically").

4. Centeno seems to argue his right to present a defense supersedes the evidence rules. AOB 37-39. But a "defendant's right to present evidence is not absolute; he must comply with established rules of evidence and procedure." *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (en banc); accord *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("[t]he accused does not have an unfettered right to offer testimony that is … inadmissible under standard rules of evidence"); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). Rules 401, 402, and 403 are obviously "well-established rules of evidence," not new or uncommon rules that conceivably could run afoul of the right if they categorically "serve no legitimate purpose or … are disproportionate to the ends that they are asserted to promote." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006) (recognizing 403 as well-established); *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

27

Centeno misplaces his reliance on *United States v. Boulware*, 384 F.3d 794 (9th Cir. 2004). (Centeno calls it *Boulder*. AOB 37-38.) *Boulware* held that a lower court erroneously excluded evidence as irrelevant, hearsay, and under Rule 403. 384 F.3d at 805-08. Nothing in *Boulware* suggests the right to present a defense pre-empts properly applied evidence rules.

5. *Boulware* did say the evidence in that case was so "crucial" to the defense that erroneously applying the rules to exclude it "denied Boulware 'a meaningful opportunity to present a complete defense'" and amounted to a due process violation. *Id.* at 808. The upshot of that is the prejudice framework changes: constitutional error requires reversal "unless the error was harmless beyond a reasonable doubt." *Id.* Otherwise, nonconstitutional evidentiary error is harmless and not reversible unless the ruling more likely than not affected the verdict. *United States v. Crowe*, 563 F.3d 969, 976 (9th Cir. 2009).

That is the last reason the district court acted within its discretion. Even without the Olanzapine inference, the defense made its case that Centeno wanted to be arrested. It pointed out Centeno gave his true name and date of birth at the Port of Entry and did

not try to sneak across the border in some place remote. It highlighted evidence that Centeno was cold, hungry, and dirty to suggest why he wanted to be arrested. It noted he did not have cash or a phone, which would make it a challenge to travel beyond the port. It emphasized that Centeno effectively brought evidence with him (his birth certificate) that would disprove his claim of U.S. nationality and ensure his arrest if he was searched. It argued he had his old BOP and ICE identification cards and an address book containing contact information for groups that provide services to prisoners, suggesting he was preparing for arrest. 3-ER-453-62.

All this evidence was stronger than the weak Olanzapine inference, sometimes much stronger. Yet the jury still did not have a reasonable doubt that the defense account was untrue, and Centeno intended to enter the country and roam freely. Put differently, much stronger evidence did not leave the jury with reasonable doubt. Topping off that evidence with an additional dubious, at best, inference would not change anything. The court's ruling could not rationally have affected the verdict regardless of the harmless error formulation.

## CONCLUSION

Centeno's conviction should be affirmed.

Respectfully submitted,

ADAM GORDON
  *United States Attorney*

DANIEL E. ZIPP
  *Assistant U.S. Attorney*
  *Chief, Appellate Section*
  *Criminal Division*

S/PETER KO
  *Assistant U.S. Attorney*

MAY 27, 2025.

30

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-3279, 23-3282

I am the attorney or self-represented party.

**This brief contains** | 6,075 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(⦿) complies with the word limit of Cir. R. 32-1.

(◯) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

(◯) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

(◯) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

(◯) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

(◯) complies with the length limit designated by court order dated | | .

(◯) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Peter Ko | **Date** | 05/27/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                        *Rev. 12/01/22*